STEVEN T. GUBNER - Bar No. 156593
ROBYN B. SOKOL - Bar No. 159506
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: 818.827.9000
Facsimile: 818.827.9099
Email: sgubner@ebg-law.com
rsokol@ebg-law.com

Attorneys for Bradley D. Sharp, Chapter 11 Trustee, Plaintiff

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>Debtor.<br><hr><br>BRADLEY D. SHARP, Chapter 11 Trustee<br><br>Plaintiff,<br><br>v.<br><br>SHARAREH RASTEGAR, an individual; ROXANA RASTEGAR, an individual; MAHI RASTEGAR, an individual; JESSICA KIMIABAKHASH, an individual; MICHELE KIMIABAKHASH, an individual; SHABNAM KIMIABAKHASH, an individual; SOLOMON RASTEGAR, individually and as Trustee of RASTEGAR FAMILY TRUST; and RASTEGAR FAMILY TRUST,<br><br>Defendants. | Case No. 2:08-bk-32333-BR<br><br>Chapter 11<br><br>Adverse Case No.: 2:11-ap-01397-BR<br><br>**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS ROXANA RASTEGAR, MAHI RASTEGAR, JESSICA KIMIABAKHASH, MICHELE KIMIABAKHASH, SHABNAM KIMIABAKHASH, SOLOMON RASTEGAR, AND THE RASTEGAR FAMILY TRUST TO DISMISS THE FIRST AMENDED COMPLAINT TO AVOID AND RECOVER PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b), 548(a), 550 and 502**<br><br>**Date:** July 19, 2011<br>**Time:** 2:00 p.m.<br>**Place:** Courtroom 1668<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

-1-

428040

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT. ............................................... 2

II. BRIEF STATEMENT OF FACTS RELEVANT TO THE MOTION. ............................. 3

III. THE FAC SATISFIES THE APPLICABLE PLEADING REQUIREMENTS. ................ 7

IV. THE FIRST CLAIM FOR RELIEF – TO AVOID AND RECOVER PREFERENTIAL TRANSFERS AGAINST SHARAHEH RASTEGAR IS SUFFICIENTLY PLEADED.10

    A. Elements of Insider Status........................................................................................ 10

    B. Defendants is a Non-Statutory Insider and All Necessary Facts  Establishing the Insider Relationship Are Set Forth in the FAC................................................ 14

V. THE FRAUDULENT TRANSFER CLAIMS FOR RELIEF ARE SUFFICIENTLY PLEADED. ................................................................................................................. 15

VI. THE SEVENTEENTH CLAIM FOR RELIEF – CLAIM DISALLOWANCE – IS SUFFICIENTLY PLEADED. ...................................................................................... 15

VII. LEAVE TO AMEND ................................................................................................... 16

VIII. CONCLUSION............................................................................................................. 16

# **TABLE OF AUTHORITIES**

Federal Cases

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................................. 3, 8

*Barnhill v. Vaudreuil (In re Busconi)*,
    177 B.R. 153 (Bankr. D. Mass. 1995) ..................................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 8, 9

*Castellani v. Kahne (In re Kucharek)*,
    79 B.R. 393 (Bankr. E.d. Wisc. 1987) ......................................................................... 13

*Connolly v. Pillsbury Winthrop Shaw Pittman LLP (In re SonicBlue, Inc.)*,
    No. 08-5084, 2008 WL 2875407 (Bankr. N.D.Cal. July 23, 2008) .................................. 9

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) ........................................................................................ 16

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................................... 16

*Freund v. Heath (In re McIver)*,
    177 B.R. 366 (Bankr. N.D. Fla. 1995) ......................................................................... 12

*Gold v. Morrice*,
    CV07-00931 DDP(JTLX), 2008 WL 467619 (C.D. Cal. Jan. 31, 2008) ........................... 8

*Gordon v. Vongsamphanh (In re Phongsavath)*,
    328 B.R. 895 (Bankr. N.D. Ga. 2005) .................................................................... 12, 13

*Gross Belsky Alonso LLP v. Henry Edelson*,
    C 08-4666 SBA, 2009 WL 1505284 (N.D. Cal. May 27, 2009) ....................................... 8

*Hirsch v. Tarricone (In re Tarricone)*,
    286 B.R. 256 (Bankr. S.D.N.Y. 2002) ......................................................................... 12

*Holloway v. Best Buy Co., Inc.*,
    C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) ....................................... 8

*In re Anderson*,
    165 B.R. 482 (Bankr.D.Or.1994) ................................................................................ 11

*In re Friedman*,
    126 B.R. 63 (9th Cir. BAP 1991) ..................................................................... 10, 11, 12

*In re Jamster Mktg. Litig.*,
    MDL 1751, 2009 WL 1456632 (S.D. Cal. May 22, 2009) ............................................... 8

*In re Oakwood Homes Corp.*,
    389 B.R. 357 (D. Del. 2008) ....................................................................................... 11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
 416 F.3d 940 (9th Cir. 2005) ........................................................................................ 16

*Love v.United States*
 915 F.2d 1242 (9th Cir. 1990) ...................................................................................... 14

*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
 2:07-CV-05756FMCFFMX, 2008 WL 4812021 (C.D. Cal. Oct. 28,
 2008) ............................................................................................................................ 16

*North Slope Borough v. Rogstand*,
 126 F.3d 1224 (9th Cir. 1997) ...................................................................................... 14

*Schreiber v. Stephenson (In re Emerson)*,
 235 B.R. 702 (Bankr. D.N.H. 1999) ....................................................................... 11, 13

*Schubert v. Lucent Tech., Inc. (In re Winstar Comm., Inc.)*,
 554 F.3d 382 (3rd Cir. 2009) ........................................................................................ 12

*U.S. Medical Inc.*,
 531 F.3d. 1272 (10th Cir. 2008) ................................................................................... 11

*Williams v. Gerber Products Co.*,
 523 F.3d 934 (9th Cir. 2008) .......................................................................................... 9

*Wilson v. Huffman*,
 712 F.2d 206 (5th Cir.1983) ......................................................................................... 11

<u>Federal Statutes</u>

11 U.S.C. § 101(31) ................................................................................................................ 10, 11

11 U.S.C. § 547…...........................................................................................................................4

11 U.S.C. § 547(b)(4)(A) .............................................................................................................. 10

11 U.S.C. § 547(b)(4)(B).................................................................................................. 3, 9, 10, 14

11 U.S.C. § 548.............................................................................................................................. 15

11 U.S.C. § 550............................................................................................................................... 4

11 U.S.C. 502(d) .................................................................................................................. 3, 4, 16

<u>Federal Rules</u>

Fed. Rule Civ. P. 8(d)(2).......................................................................................................... 3, 15

Fed. Rule Civ. P. 12(b) .................................................................................................................. 3

428040

Plaintiff Bradley D. Sharp ("Plaintiff"), the Chapter 11 Trustee for the Estate of Namco Capital Group, Inc., a California corporation (the "Debtor"), hereby submits this opposition to the "Motion Of Defendants Roxana Rastegar, Mahi Rastegar, Jessica Kimiabakhash, Michele Kimiabakhash, Shabnam Kimiabakhash, Shabnam Kimiabakhash, Solomon Rastegar, And The Rastegar Family Trust To Dismiss The First Amended Complaint To Avoid And Recover Preferential Transfers Pursuant To 11 U.S.C. §§ 547(b), 548(a), 550 and 502" ("Motion") filed by Roxana Rastegar ("R. Rastegar"), Mahi Rastegar ("M. Rastegar"), Jessica Kimiabakhash ("J. Kimiabakhash"), Michele Kimiabakhash ("M. Kimiabakhash), Shabnam Kimiabakhash ("S. Kimiabakhash"), Solomon Rastegar, and The Rastegar Family Trust (collectively, "Defendants").  By and through the Motion the Defendants seek to dismiss the Third through Seventeenth Claims for Relief contained in the "First Amended Complaint to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547(b), 548(a), 550 and 502" ("FAC").

## I. INTRODUCTION AND SUMMARY OF ARGUMENT.

The Motion seeks to dismiss those claims to avoid preferential transfers made to insiders (Motion, p. 1).  Thus, the claims that Defendants seek to have dismissed by the Motion are the Third, Fifth, Seventh, Ninth, Eleventh and Thirteenth Claims for Relief (collectively "Insider Preference Claims").  The Fifteenth Claim for relief against Solomon Rastegar, seeks to avoid a preferential transfer that occurred within 90-days of the Petition Date[1]. The Fourth, Sixth, Eighth, Tenth, Twelfth, Fourteenth, and Sixteenth Claims for Relief (collectively, "Fraudulent Transfer Claims") are pleaded in the alternative and are only applicable if Defendants contend that they are not creditors of the Debtor.   As the Motion also joins and incorporates all arguments that are applicable in Sharareh Rastegar's Motion to Dismiss [Adv. Docket No. 12] ("Sharareh Motion"), Plaintiff will briefly address these arguments as well.

The pivotal issue raised in the Sharareh Motion and the Motion is whether the Defendants are insiders.  As demonstrated herein not only are the factual allegations sufficient to establish that the Defendants are non-statutory insiders of the Debtor but the statute, legislative authority

---

[1] All initial capitalized terms not defined herein shall have the meaning ascribed to them in the FAC.

-2-

428040

and established case law fully support a finding that each of the Defendants is a non-statutory insider of the Debtor and the Transfers are avoidable under 11 U.S.C. § 547(b)(4)(B).

The FAC alleges facts sufficient to establish that each of the Defendants is a non-statutory insider.  For purposes of a motion to dismiss under Federal Rule of Civil Procedure ("Rule(s)") 12(b), "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Not only does the FAC allege facts sufficient to set forth "plausible" claims for relief but the FAC sets forth detailed facts as to each and every allegation contained in the FAC.  All necessary allegations are contained in the FAC and the attachments thereto and such allegations are not mere conclusions and recitations of the elements of the Claims but paint a detailed picture of the relationship that existed among the Defendants, Ezri Namvar, and the Debtor.

With respect to the Fraudulent Transfer Claims for Relief, Defendants by joining and incorporating the Sharareh Motion, argue that because Plaintiff admits that they are all creditors, the Fraudulent Transfer Claim for Relief (which is brought in the alternative only if any one of the Defendants claims it is not a creditor) must be dismissed.  Pleading in the alternative is appropriate. Fed. Rule Civ. P. 8(d)(2).

The Seventeenth Claim for relief simply seeks to have 11 U.S.C. 502(d) apply should a judgment be rendered in favor of the Plaintiff.  The Seventeenth Claim for Relief is properly pleaded.

The allegations in the FAC are more than sufficient to establish that each of the Defendants is a non-statutory insider and that each of the Claims alleged is "plausible."

**II.    BRIEF STATEMENT OF FACTS RELEVANT TO THE MOTION.**

By and through the FAC, the Plaintiff seeks to recover certain transfers made by the Debtor to Sharaheh Rastegar [$2,095,969.98], Roxana Rastegar [$474,640.58], Mahi Rastegar [$43,038.89], Jessica Kimiabakhash [$82,335.59], Michele Kimiabakhash [86,934.47], Shabnam Kimiabakhash [$122,381.97], the Rastegar Family Trust  [$735,100.58] and Solomon Rastegar

-3-

428040

[$39,698.71]. FAC ¶¶ 1, 34 - 41, Exhibits 4 - 20[2]. The Defendants received transfers totaling $3,478,383.21 during the 1 year prior to the Petition Date ("Transfers"). *Id.* Through the FAC, the Plaintiff seeks entry of a judgment avoiding the Transfers pursuant to 11 U.S.C. §§ 547 and/or 548, and recovering the transfers pursuant to 11 U.S.C. § 550, and disallowing any claim of the Defendants including pursuant to 11 U.S.C. § 502(d) until Defendants pay the transfers at issue in full to Plaintiff.

Each of the Defendants and the Debtor had a personal, professional and business relationship that was sufficiently close enough for Defendants to gain an advantage attributable to affinity. FAC ¶¶ 16- 31, Exhibits 1 -3.

Prior to the Petition Date, the Debtor had been in business for approximately 20 years. Debtor's general business model was relatively simple and straightforward - - Debtor would borrow money from individuals ("Lender Funds"), most often members of the West Los Angeles Persian community (individually hereinafter referred to as a "Namco Lender"), agree to pay such Namco Lender a fixed rate of return, and the Debtor would then either lend those funds to third parties, at interest rates typically six percent or more higher than the cost of capital payable to the Namco Lender, or invest such funds in various real estate projects. FAC ¶ 32.

Defendants are all members of a very close knit family in which Solomon Rastegar is the patriarch (the "Family"). Defendants Sharaheh Rastegar and Roxana Rastegar are daughters to Solomon Rastegar and M. Rastegar is Solomon Rastegar's spouse. FAC ¶ 16. The Family held close business ties to the Debtor and treated and considered Ezri Namvar ("Namvar") as a family member. FAC ¶¶ 17-24.

During each of the transfers at issue, Solomon Rastegar was a very close, personal friend of Namvar. Solomon Rastegar's and Namvar's relationship reaches back over two decades and Solomon Rastegar regarded and treated Namvar as his son. FAC ¶¶ 17, 23-24, Exhibit 1. Namvar had a very close relationship with the Family. Namvar viewed and treated the Family as his family. *Id.* This close relationship extended to the other members of the Family as well.

---

[2] Exhibits 4 – 20 consist of charts with the date of each transfer, the amount of the transfer, the bank statements indicating that the transfer cleared the Debtor's bank account and all backup documentation for the transfers including copies of the checks.

-4-

428040

Solomon Rastegar referred to himself as "Ezri's best friend" and Namvar referred to and considered Solomon Rastegar to be his "best friend." FAC ¶ 17. This close friendship lead to many personal and business relationships between the Family and Namvar. FAC ¶ 17, 23-24, Exhibit 1.

Over a period of many years predating the Debtor and Namvar bankruptcies, the Family made a series of **unsecured** loans to Namco. By August 2008, the total balance owing on the Family loans to Namco was in excess of $18,525,000[3]. FAC ¶ 18, Exhibit 2.

Namvar was a limited partner or member of a number of entities in which the Defendants were limited partners or members including but not limited to the following: (a) Flow 7 LLC in which Solomon Rastegar owns a 50% interest and Namvar owns a 50% interest; (b) Amona, Inc. in which Namvar's children own a 50% interest and the Family owns 50% interest; and (c) Wall Street Mart, L.P., a California Limited Partnership ("Wall Street") in which the limited partnership interests were held 49% by Namvar and 49% by Rastegar family members. FAC ¶ 19. Namvar was a limited partner along with Shabnam Kimiabakhsh, Solomon Rastegar, and Mahi Rastegar of Wall Street. Wall Street functioned as a holding company for a handful of valuable commercial real estate investments made by Solomon Rastegar and Namvar over the course of many years. FAC ¶ 20.

On or about January 6, 1995, Namvar and Houshang Namvar attended the annual meeting of the board of Directors of Amona Inc., a corporation owned exclusively by members of the Family. The minutes from this meeting reflect that "After long negotiations it was agreed to increase the paid up Capital to $100,000. 50% by Rastegar Family and 50% by Namvar Family." Namvar was made president of Amona, Inc. and placed on the board of directors. FAC ¶ 21.

---

[3] As pointed out numerous times in the Motion, the FAC contains an obvious typographical error. The amount loaned to the Debtor by the Family was in excess of $18,525,000, not $18,525.00 (FAC ¶ 18). Exhibit 2 indicates that the outstanding amount of the loans was $23,525,000. In Exhibit 2 which is an email dated November 2008 from Solomon Rastegar to Namvar, Solomon Rastegar states: "After sale of Amona I have 23,525,000 with you. …the balance of my account." FAC, Exhibit 2.

-5-

428040

The human resources of the Debtor were often used by Amona, Inc. at the request of Solomon Rastegar and Namvar. For example Hamid Taba was asked to make sure that the books and records of Amona, Inc. were put in order. Namvar also instructed Solomon Rastegar that Hamid could assist Solomon Rastegar object to the Namco claim against the Wall Street Property in the amount of $12.6 million. FAC ¶ 22.

Namvar heavily involved in the Family on a personal and business level but at all times herein mentioned in the FAC, Solomon Rastegar was the Trustee of the Namvar Charitable Trust. FAC ¶ 23.

Solomon Rastegar was the gatekeeper for the Family with respect to any and all investments in and with the Debtor. FAC ¶¶ 25, 26, Exhibits 1-3. Solomon Rastegar controlled, funded and was responsible for all accounts of the Defendants (including Sharareh) with respect to the Debtor. Solomon Rastegar opened each of the Defendants' accounts with the Debtor. Solomon Rastegar himself invested all of the Family's money with Namvar and Plaintiff is informed and believes that Solomon Rastegar alone made the decisions concerning investments in and with the Debtor. All distributions from the Defendants' Namco accounts were made at the direction of Solomon Rastegar. FAC ¶¶ 25, 27 and Exhibit 1.

Solomon Rastegar and the Debtor treated all accounts involving the Family as Solomon Rastegar's accounts and money. In a December 9th e-mail, Solomon Rastegar states that:

> **All my** other properties plus the sale of the Big Tract of land were deposited with Ezri in total of $25,525,000.00. Now I am without any mean[s] of survival. Out of this sum 2 million was paid to my daughter in NY [Shararh Rastegar] and 5 M. was in exchange account.

See FAC ¶ 26 and Exhibit 1.

The Debtor made a distribution of $2,000,000 to Sharareh Rastegar at the direction of Solomon Rastegar. FAC ¶ 27 and Exhibit 2. Solomon Rastegar directed all distributions from the Family accounts. Without Solomon Rastegar's consent or blessing no such distributions would be made. FAC ¶¶ 25, 27 and Exhibits 1-3. Solomon Rastegar was responsible for directing all investments and distributions on behalf of the Family with respect to Namco. *Id.*

-6-

428040

1     Namvar was the President, sole Director and sole Shareholder of the Debtor and controlled the Debtor in all respects. FAC ¶ 29.

    Because of the Family's and Solomon Rastegar's special relationship with Namvar and Namvar's position with the Debtor and Solomon Rastegar's relationship with the Defendants as the gatekeeper to the Family money, Defendants are nonstatutory insiders pursuant to applicable bankruptcy case law. FAC ¶ 30.

    Defendants and the Debtor had a personal, professional and business relationship that was sufficiently close enough for Defendants to gain an advantage attributable to affinity. Defendants are therefore insiders of the Debtor based on the statutory and/or nonstatutory definitions. FAC ¶¶ 16-31, Exhibits 1-3.

    The Debtor was insolvent at the time of each of the Transfers. FAC ¶¶ 42-45. From 2005 through the Petition Date, Debtor operated at a loss and was unable to pay all of its debts as they came due. FAC ¶¶ 43-45. Prior to one year from the Petition Date, Debtor had creditors whose obligations it was not paying as they became due. FAC ¶ 46.

**III.    THE FAC SATISFIES THE APPLICABLE PLEADING REQUIREMENTS.**

    The FAC fully satisfies the pleading requirements of Rule 8. The FAC contains very detailed allegations regarding insider status (FAC ¶¶ 16-31 and Exhibits 1-3), allegations regarding the Debtor and each of the Transfers at issue (FAC ¶¶ 32-41 and Exhibits 4-20), allegations that the Debtor was insolvent (FAC ¶¶ 42-46) and allegations for each of the Third through Seventeenth Claims brought against the Defendants ("Claims") (FAC ¶¶ 63-177) which fully and specifically support each of the Claims. The FAC contains detailed allegations that establish that Defendants are each non-statutory insiders. FAC ¶¶ 16-31 and Exhibits 1-3.

    Contrary to the contentions of the Defendants, the Claims are not based upon mere conclusory statements and formulaic recitations of the elements of each of the Claims nor does the FAC fail to specifically support how each of the Defendants is a non-statutory insider. Instead, the FAC completely and fully sets forth in detail facts sufficient to support each of the Claims.

-7-

428040

1   Plaintiff meets the pleading requirements of Rule 8 with respect to each and every
2   element of each of the Claims.  While in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the
3   Supreme Court emphasized that "a plaintiff's obligation to provide the grounds of his entitlement
4   to relief requires more than labels and conclusions, and a formulaic recitation of the elements of
5   a cause of action will not do," *Id.* at 555-556 (internal quotation marks and alterations omitted),
6   the Supreme Court also made it clear that its holding did "not require heightened fact pleading of
7   specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.
8   As set forth in *Ashcroft v. Iqbal*:

> To survive a motion to dismiss, a complaint must contain **sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face**. [Citation.]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation.]  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(emphasis added).

The FAC satisfies the "plausibility standard" and is "in the ballpark" of the requirements as presented in *Twombly* and *Iqbal*.   That is, the facts alleged demonstrate more than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 129 S. Ct. at 1949; *Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007).  **Courts in the 9th Circuit have not read *Twombly* to alter fundamentally the requirement of notice pleading, which is designed to "give the defendant fair notice."**  *Gold v. Morrice*, CV07-00931 DDP(JTLX), 2008 WL 467619 (C.D. Cal. Jan. 31, 2008) *quoting Twombly, at 1964*.  The other standards set forth in previous case law in relation to motions to dismiss survive the rulings in *Twombly* and *Iqbal*.  "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what… the claim is and the grounds upon which it rests." *Gross Belsky Alonso LLP v. Henry Edelson*, C 08-4666 SBA, 2009 WL 1505284 (N.D. Cal. May 27, 2009) (*citing Twombly* and *Iqbal*); *see also Holloway v. Best Buy Co., Inc.*, C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) (which cites *Twombly* and *Iqbal*); *In re Jamster Mktg. Litig.*, MDL 1751, 2009 WL 1456632 (S.D. Cal. May

-8-

428040

1   22, 2009) (*also citing Twombly* and *Iqbal*);  *Connolly v. Pillsbury Winthrop Shaw Pittman LLP*

2   *(In re SonicBlue, Inc.)*, No. 08-5084, 2008 WL 2875407 (Bankr. N.D.Cal. July 23, 2008).

3         Even after *Twombly*, Rule 8 merely requires that a claim be pled so as to give a defendant

4   fair notice of what the claim is and the grounds upon which it rests.  Notice pleading, regardless

5   of the context, requires only general notice of a claim.  *Id.*  A plaintiff must plead only broad

6   allegations of the *prima facie* elements of an alleged violation and "enough facts to state a claim

7   to relief that is plausible on its face" and "raise a right to relief above the speculative level."  *See,*

8   e*.g., Williams v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*citing Twombly*, 550

9   U.S. 544 (2007)).  **What Rule 8 does not require is detailed factual pleading.**  *Twombly*, 127

10  S. Ct. at 1964, 1974.

11        Applying this standard to the FAC, it is indisputable that the requisite allegations are

12  contained in the FAC, and that Plaintiff has fully set forth with particularity each of the Claims.

13  The FAC provides fair notice to Defendants as it sets forth in tremendous detail each element of

14  each of the Claims (FAC ¶¶ 35-41, 63-177, Exhibits 6-20) and the actions and circumstances that

15  give rise to each of their insider status (FAC ¶¶ 16-31, Exhibits 1-3).  The FAC provides

16  Defendants with notice of the claims that are brought against them and the legal and factual

17  grounds for such claims.  *Id.* The FAC seeks to avoid Transfers made by the Debtor to

18  Defendants.  FAC ¶¶ 16-31, 63-177, Exhibits 1-20.  As to those Transfers that arose outside the

19  90-day preference period, the Plaintiff seeks to avoid such Transfers under 11 U.S.C.

20  § 547(b)(4)(B).    In addition to providing each and every detail of the Transfers at issue (date,

21  amount, cancelled checks, wiring instructions, bank statements) and specific details about the

22  Debtor's insolvency at the time of each of the Transfers (FAC ¶¶ 35-41, 63-177, Exhibits 6-20),

23  the FAC provides specific instances and factual allegations describing the insider status of

24  Defendants (FAC ¶¶ 16-31, Exhibits 1-3).

25        The very fact that Defendants are able to provide such detailed legal and factual argument

26  regarding the allegations in the FAC (Motion, pp. 3-8), demonstrates that the FAC sufficiently

27  sets forth the Claims and provides Defendants with sufficient information upon which to defend

28  each of the Claims.

-9-

428040

## IV. THE FIRST CLAIM FOR RELIEF – TO AVOID AND RECOVER PREFERENTIAL TRANSFERS AGAINST SHARAHEH RASTEGAR IS SUFFICIENTLY PLEADED.

The sole argument raised by Defendants in support of the dismissal of the Claims is that the FAC fails to plead facts sufficient to establish that it is "plausible" that each of the Defendants is an insider. Motion, p. 1:12-24. Plaintiff concedes that Defendants are not insiders under Section 101(31)(B) and (E) of the Bankruptcy Code and are not "per se insider." Defendants are, however, non-statutory insiders and the FAC contains sufficient non-conclusory factual allegations supporting Defendants' non-statutory insider status. FAC ¶¶ 16-31, Exhibits 1-3.

The "determination of insider status is a question of fact." *In re Friedman,* 126 B.R. 63, 67 (9th Cir. BAP 1991); *In re Demko*, 264 B.R. 404, 408 (Bankr. W.D. Penn. 2001) ("[n]on-statutory insider status is a fact-intensive inquiry that must be determined on a case-by-case basis.") Thus, as long as sufficient facts are pleaded setting forth the basis for the non-statutory insider status of each of the Defendants, dismissal of the First Claim for Relief is inappropriate and the Motion should be denied.

### A. Elements of Insider Status.

A bankruptcy trustee "may avoid any transfer of an interest of the debtor in property" if, *inter alia,* the transfer was made "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). If, however, the creditor was an "insider" at the time of the transfer, then the trustee can avoid any transfer made "between ninety days and one year before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(B). The Bankruptcy Code lists entities that are considered "insiders" when the debtor is a corporation:

"insider" includes—

…

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

-10-

428040

      (iii) person in control of the debtor;

      (iv) partnership in which the debtor is a general partner;

      (v) general partner of the debtor; or

      **(vi) relative of a general partner, director, officer, or person in control of the debtor.[4]**

11 U.S.C. § 101(31) (emphasis added). The definition of "insider" is not limiting. *U.S. Medical Inc.*, 531 F.3d. 1272, 1276-77 (10th Cir. 2008); *Enterprise Acquisition Partners, Inc.*, 319 B.R. 626 (9th Cir. B.A.P. 2004); *In re Friedman,* 126 B.R. 63, 69–70 (9th Cir. BAP 1991). "The use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition." *Id.*

There are two distinct types of insiders, those entities specifically mentioned in the statute ("relative," "partnership," "general partner," and "corporation") – per se insiders, and "non-statutory insiders" – those not listed in the statutory definition, but who have a "... sufficiently close relationship with the debtor that ... conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Miller Ave. Profl & Promotional Servs.* v. *Brady (In re Enter. Acquisition Partners),* 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004), *quoting Wilson v. Huffman,* 712 F.2d 206, 210 (5th Cir.1983); *see also U.S. Medical Inc.*, 531 F.3d. 1272 (10th Cir. 2008)*; In re Anderson,* 165 B.R. 482, 485 (Bankr.D.Or.1994). "A party can be an insider even though not included in one of the categories listed in the definition." *Barnhill v. Vaudreuil (In re Busconi),* 177 B.R. 153, 158 (Bankr. D. Mass. 1995); *See also OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp., 389 B.R. 357, 366 (D. Del. 2008)(* "courts have uniformly held that the Bankruptcy Code's definition is merely illustrative and that the term 'insider' must be flexibly applied on a case-by case basis."); *Schreiber v. Stephenson (1n re Emerson),* 235 B.R. 702, 706 (Bankr. D.N.H. 1999) ("Courts have widely agreed that Congress did not intend to limit the classification of insiders to the statutory definition").

The legislative history pertaining to the definition of "insider" clearly states that:

[a]n insider is one who has a sufficiently close relationship with the debtor that his

---

[4] Solomon Rastegar along with the Family were the de facto relatives of Namvar, the President, sole Director and sole Shareholder of the Debtor. FAC ¶¶ 16, 17, 23, 24, 29.

-11-

428040

1 |       conduct is made subject to closer scrutiny *than those dealing at arms [sic] length with the debtor.*

3 *S.Rep. No. 95-989, at 25 (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5810; H.R.Rep. No. 95-595, at 312 (1977)* (emphasis added).

      Courts have developed a few guidelines for determining non-statutory insider status. Courts look to the types of insiders listed in the statute for guidance in determining who qualifies as a non-statutory insider. *In re Busconi,* 177 B.R. at 158. "It would seem from these examples that Congress intended to include those whom the debtor looked kindly upon and those who have significant influence on the debtor even though not 'in control' of the debtor." *Id.* No finding of "actual control" is necessary to declare an entity a non-statutory insider. *Schubert* v. *Lucent Tech., Inc. (In re Winstar Comm., Inc.),* 554 F.3d 382,396 (3rd Cir. 2009). A creditor does not need to have a "direct relationship with the debtor (other than as creditor)" as long as they have a "close personal relationship with persons who are statutory insiders." *Hirsch* v. *Tarricone (In re Tarricone),* 286 B.R. 256,263-64 (Bankr. S.D.N.Y. 2002).

      Such "non-statutory insiders" are those with a "sufficiently close relationship with the debtor that [their] conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *In re Enter. Acquisition Partners,* 319 B.R. at 631 (internal quotation omitted). "The inquiry then is whether there is a close relationship *and* whether there is anything other than closeness to suggest that any transactions were not conducted at arm's length." *(In re U.S. Med., Inc.,* 531 F.d 1272, 1277 (10th Cir. 2008). This is a "fact-intensive" determination that "must be decided on a case-by-case basis." *Rainsdan v. Farson (In re Farson),* 387, B.R. 784, 792 (Bankr. D. Idaho 2008). While it is true that "not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship," *In re Friedman,* 126 B.R. 63,70, "the case law has revealed" that "personal relationships can ... serve as the basis for 'insider' status." *Freund v. Heath (In re McIver),* 177 B.R. 366 (Bankr. N.D. Fla. 1995). While mere friendship is not a sufficient basis for declaring someone to be an insider, friendship *can,* however, be taken into account in determining insider status. *Gordon* v. *Vongsamphanh (In re Phongsavath),* 328 B.R. 895, 898

-12-

428040

1  (Bankr. N.D. Ga. 2005); *Castellani v. Kahne (In re Kucharek),* 79 B.R. 393, 397(Bankr. E.d.
2  Wisc. 1987).

3  In this case it is evident from the allegations in the FAC not only that the Defefendants
4  had a sufficiently close relationship with the Debtor through Namvar but also that the
5  transactions between the Debtor and the Defendants were not arm's length transactions.  FAC
6  ¶¶ 18-28, 32, Exhibits 1-3.  The Family had a quasi-familial relationship with Namvar, the sole
7  shareholder and president of Namco.  FAC ¶¶ 16-17, 23, 24, 29, 31, Exhibit 1.  The Family was
8  Namvar's *de facto* family, which acted similarly to a real family (i.e. loaned money to one
9  another, were involved in one another's companies, gave each other advice and guidance, and
10 interacted regularly).  FAC ¶¶ 16-31, Exhibits 1-3.  Additionally, as Solomon Rastegar
11 maintained complete control of the accounts of all of the Defendants, the relationship of
12 Solomon Rastegar must be imputed to the Family as a whole.  FAC ¶¶ 25-28, Exhibit 1-3.  No
13 money was loaned or invested by the Family in Namco independent of Solomon Rastegar.
14 Solomon Rastegar treated each one of the Defendants accounts as his own and no distributions
15 were made without Solomon Rastegar's consent.  *Id.*  Thus, Defendants qualify as non-statutory
16 insiders under the pseudo-familial relationship test.  See *In re Phongsavath*, 328 B.R. at 897-98.

17 The FAC also establishes that the Transfers at issue and the transactions between these
18 parties were not conducted at arm's length.  FAC ¶¶ 18-22, 24, 32.  Such elements, as
19 summarized in *In re Emerson,* 235 B.R. at 707, include *inter alia* whether: (1) "the loans were
20 made on an unsecured basis and without inquiring into the debtor's ability to repay the loans"; (2)
21 "the transferee knew the debtor was insolvent" but made the loans anyway; (3)  "there were
22 numerous loans between the parties"; (4) "there were any strings attached" on how the money
23 could be used;  (5) "the loans were commercially motivated"; (6) "the transferee had an ability to
24 control or influence the debtor";  (7) "there was a personal, business, or professional relationship
25 ... allowing the transferee to gain an advantage such as that attributable simply to affinity"; and
26 (8) "there is evidence of a desire to treat the transferee differently from all other general
27 unsecured creditors." *Id.*

28

-13-

428040

**B.  Defendants is a Non-Statutory Insider and All Necessary Facts Establishing the Insider Relationship Are Set Forth in the FAC.**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor. *North Slope Borough v. Rogstand*, 126 F.3d 1224, 1228 (9th Cir. 1997) (*citing Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)).  In support of the "insider" status necessary to avoid a transfer under 11 U.S.C. § 547(b)(4)(B), the FAC is replete with supporting factual allegations and supporting documentation. FAC ¶¶ 16-31, Exhibits 1-3.  The allegations in the FAC demonstrate that it is plausible that Solomon Rastegar, as the patriarch of the Family, controlled the funds of the Family and was the gatekeeper for all of the accounts established at Namco.  No investments were made or disbursements made to any member of the Family including the Defendants, without Solomon Rastegar's approval or at his request.  FAC ¶¶ 25-28, Exhibits 1-3.  The FAC alleges that Solomon Rastegar as well as the other Defendants, had a pseudo familial relationship with Namvar.  FAC ¶¶ 16, 17, 23, 24, 29, 31, Exhibit 1.  Solomon Rastegar often referred to Namvar as his son and Namvar considered Solomon Rastegar his best friend. FAC  ¶ 17.  Namvar treated the Family as his own. *Id.*  It is clear that as a result of the close relationship between Namvar and the Family, none of the Transfers and other business dealings were arm's length transactions.  FAC ¶¶ 18-22, 24, Exhibits 1, 3.   But for the special "insider" relationship between the Debtor and the Family, the Transfers would not have been made.  The FAC when examined in its entirety including all of the Exhibits paints a very detailed and clear picture showing that it is plausible that each of the Defendants is a non-statutory insider of the Debtor.

Defendants know exactly what the claims of the Plaintiff are and are able to defend the claims.  No more needs to be pleaded.

///

///

///

///

-14-

428040

## V. THE FRAUDULENT TRANSFER CLAIMS FOR RELIEF ARE SUFFICIENTLY PLEADED.[5]

The Fraudulent Transfer Claims for Relief are pled in the alternative. FAC ¶¶ 73, 80, 105, 121, 137, 151, 167. Rule 8(d)(2) states that:

> A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2). Each of the Fraudulent Transfer Claims for Relief is just that, a pleading in the alternative, in which, the Plaintiff pleads that if any one of the Defendants is not a creditor of the Debtor (did not receive the transfer on account of antecedent debt), then the Trustee seeks to avoid and recover the Transfer as a constructively fraudulent transfer under 11 U.S.C. § 548.

The Fraudulent Transfer Claims for Relief are properly pled and withstand the Motion. Each of the Fraudulent Transfer Claims for Relief alleges that if any one of the Defendants is not a creditor of the Debtor, Defendants received transfers of the Debtor's property, the Transfers, for which the Debtor did not receive reasonably equivalent value at a time that the Debtor was insolvent. FAC ¶¶ 32, 35-46, 74-79, 90-94, 106-110, 122-126, 138-141, 152-156, 168-172, Exhibits 6-20.

If Defendants admit in each of their answers that they are creditors of the Debtor and that they received the Transfers on account of antecedent debt, the Plaintiff will not proceed with this claim for relief. Until such time as the Defendants make such admissions, the Fraudulent Transfer Claims for Relief are appropriate and are fully and sufficiently pleaded.

## VI. THE SEVENTEENTH CLAIM FOR RELIEF – CLAIM DISALLOWANCE – IS SUFFICIENTLY PLEADED.

The Seventeenth Claim for Relief is properly and sufficiently pleaded. This Claim for relief incorporates all of the specific allegations contained in the FAC which relate to each of the Defendants. The Seventeenth Claim for Relief simply seeks disallowance of the claims that any

---

[5] As the Motion joins and adopts the Sharareh Motion (Motion, p.1, fn. 1), Plaintiff addresses the adopted requests to dismiss the Fraudulent Transfer Claims and the Seventeenth Claim for Relief.

-15-

428040

of the Defendants hold against the Debtor pursuant to 11 U.S.C. § 502(d).   Section 502(d) provides that:

> …the court shall disallow any claim of any entity from which property is recoverable under section …550,..547, 548…of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section…550 …of this title.

11 U.S.C. § 502(d).  This claim is sufficiently pleaded.  FAC ¶¶ 2, 173-177.

## VII. <u>LEAVE TO AMEND</u>.

To the extent this Court is inclined to grant the Motion, Plaintiff requests leave to amend. In dismissing for failure to state a claim, "a district court should grant leave to amend …unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted); *see also New York State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, 2:07-CV-05756FMCFFMX, 2008 WL 4812021 (C.D. Cal. Oct. 28, 2008); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). While Plaintiff believes the FAC is more than sufficient to withstand Defendants' attacks, should the Court be inclined to grant the Motion, Plaintiff requests leave to amend to address any deficiencies noted by the Court.

## VIII. <u>CONCLUSION</u>.

For the reasons set forth above, the Motion must be denied in its entirety.  In the alternative, the Plaintiff respectfully requests an opportunity to file an amended complaint to correct any deficiencies in the FAC that this Court determines exist.

Dated: July 5, 2011                                         EZRA BRUTZKUS GUBNER LLP

By: /s/ Robyn B. Sokol
Robyn B. Sokol
Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

-16-

428040