STEVEN T. GUBNER - Bar No. 156593
ROBYN B. SOKOL - Bar No. 159506
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
Telephone:  818.827.9000
Facsimile:   818.827.9099
Email:      sgubner@ebg-law.com
             rsokol@ebg-law.com

Attorneys for Bradley D. Sharp, Chapter 11 Trustee, Plaintiff

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:08-bk-32333-BR |
| NAMCO CAPITAL GROUP, INC., a California corporation, | Chapter 11 |
| Debtor. | Adverse Case No.:  2:11-ap-01397-BR |
| | **PLAINTIFF'S OPPOSITION TO MOTION BY SHARAREH RASTEGAR TO MOTION DISMISS FIRST AMENDED COMPLAINT AGAINST HER TO SET ASIDE AND RECOVER PREFERENTIAL TRANSFERS** |
| BRADLEY D. SHARP, Chapter 11 Trustee | |
| Plaintiff, | **Date:**  July 19, 2011 |
| vs. | **Time:** 2:00 p.m. |
| SHARAHEH RASTEGAR, an individual; ROXANA RASTEGAR, an individual; MAHI RASTEGAR, an individual; JESSICA KIMIABAKHASH, an individual; MICHELE KIMIABAKHASH, an individual; SHABNAM KIMIABAKHASH, an individual; SOLOMON RASTEGAR, individually and as Trustee of RASTEGAR FAMILY TRUST; and RASTEGAR FAMILY TRUST, | **Place:** Courtroom 1668<br>United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |
| Defendants. | |

427872

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT. ................................................ 2

II.     BRIEF STATEMENT OF FACTS RELEVANT TO THE MOTION. ............................. 3

III.    THE FAC SATISFIES THE APPLICABLE PLEADING REQUIREMENTS. ................ 7

IV.     THE FIRST CLAIM FOR RELIEF – TO AVOID AND RECOVER PREFERENTIAL
        TRANSFERS AGAINST SHARAHEH RASTEGAR IS SUFFICIENTLY PLEADED.. 9

        A.     Elements of Insider Status. ................................................................. 10

        B.     Sharareh is a Non-Statutory Insider and All Necessary Facts Establishing the
               Insider Relationship Are Set Forth in the FAC. ....................................... 13

V.      THE SECOND CLAIM FOR RELIEF – TO AVOID AND RECOVER   FRAUDULENT
        TRANSFERS IS SUFFICIENTLY PLEADED. ........................................................... 15

VI.     THE SEVENTEENTH CLAIM FOR RELIEF – CLAIM DISALLOWANCE –  IS
        SUFFICIENTLY PLEADED. ....................................................................................... 15

VII.    LEAVE TO AMEND. .................................................................................................. 16

VIII.   CONCLUSION. ........................................................................................................... 17

<u>Federal Cases</u>

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................ 3, 8

*Barnhill v. Vaudreuil (In re Busconi)*,
    177 B.R. 153 (Bankr. D. Mass. 1995) ...................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 7, 8, 9

*Castellani v. Kahne (In re Kucharek)*,
    79 B.R. 393 (Bankr. E.d. Wisc. 1987) ...................................................... 12, 13

*Connolly v. Pillsbury Winthrop Shaw Pittman LLP (In re SonicBlue, Inc.)*,
    No. 08-5084, 2008 WL 2875407 (Bankr. N.D.Cal. July 23, 2008) ................................... 8

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) .................................................................. 16

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ................................................................ 16

*Freund  v. Heath (In re McIver)*,
    177 B.R. 366 (Bankr. N.D. Fla. 1995) ........................................................ 12

*Gold v. Morrice*,
    CV 07-00931 DDP (JTLX), 2008 WL 467619 (C.D. Cal. Jan. 31,
    2008) ....................................................................................... 2, 8

*Gordon v. Vongsamphanh (In re Phongsavath)*,
    328 B.R. 895 (Bankr. N.D. Ga. 2005) ...................................................... 12, 13

*Gross Belsky Alonso LLP v. Henry Edelson*,
    C 08-4666 SBA, 2009 WL 1505284 (N.D. Cal. May 27, 2009) ..................................... 8

*Hirsch v. Tarricone (In re Tarricone)*,
    286 B.R. 256 (Bankr. S.D.N.Y. 2002) ........................................................ 12

*Holloway v. Best Buy Co., Inc.*,
    C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) .................................... 8

*In re Anderson*,
    165 B.R. 482 (Bankr.D.Or.1994) .............................................................. 11

*In re Friedman*,
    126 B.R. 63 (9th Cir. BAP 1991) .......................................................... 10, 11, 12

*In re Jamster Mktg. Litig.*,
    MDL 1751, 2009 WL 1456632 (S.D. Cal. May 22, 2009) .......................................... 8

*In re Oakwood Homes Corp.*,
    389 B.R. 357 (D. Del. 2008) ................................................................. 11

*In re SONICblue Inc.*, 03-51775-MM, 2008 WL 2875407 (Bankr. N.D. Cal.
    July 23, 2008) ............................................................................... 8

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
    416 F.3d 940 (9th Cir. 2005) ............................................................................. 16

*Love v. United States*,
    915 F.2d 1242 (9th Cir. 1990) ........................................................................... 13

*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
    2:07-CV-05756FMCFFMX, 2008 WL 4812021 (C.D. Cal. Oct. 28,
    2008) ................................................................................................................. 16

*North Slope Borough v. Rogstand*,
    126 F.3d 1224 (9th Cir. 1997) ........................................................................... 13

*Resnick v. Hayes*, 213 F.3d 443 (9th Cir. 2000) ....................................................... 2

*Schreiber v. Stephenson (1n re Emerson)*,
    235 B.R. 702 (Bankr. D.N.H. 1999) ............................................................ 11, 13

*Schubert v. Lucent Tech., Inc. (In re Winstar Comm., Inc.)*,
    554 F.3d 382 (3rd Cir. 2009) ............................................................................. 12

*U.S. Medical Inc.*,
    531 F.3d. 1272 (10th Cir. 2008) ................................................................... 11, 12

*Williams v. Gerber Products Co.*,
    523 F.3d 934 (9th Cir. 2008) ............................................................................... 9

*Wilson v. Huffman*,
    712 F.2d 206 (5th Cir.1983) .............................................................................. 11

Federal Statutes

11 U.S.C. § 101(31) .............................................................................................. 9, 11

11 U.S.C. § 547(b)(4)(A) ...................................................................................... 3, 10

11 U.S.C. § 547(b)(4)(B) .......................................................................... 2, 9, 10, 14

11 U.S.C. § 548 .................................................................................................... 3, 15

11 U.S.C. § 550 .......................................................................................................... 4

11 U.S.C. 502(d) ........................................................................................... 3, 4, 15, 16

Federal Rules

Fed. Rule Civ. P. 8(d)(2) ..................................................................................... 3, 15

Fed. Rule Civ. P. 12(b)(6) ....................................................................................... 13

FRBP 3007 ............................................................................................................... 16

FRBP 3007(b) .......................................................................................................... 16

1       Plaintiff Bradley D. Sharp ("Plaintiff"), the Chapter 11 Trustee for the Estate of Namco

2 Capital Group, Inc., a California corporation (the "Debtor"), hereby submits this opposition to

3 the "Motion by Sharareh Rastegar to Dismiss the First Amended Complaint Against Her to Set

4 Aside and Recover Preferential Payments [or Fraudulent Transfers] and Objecting to Claims"

5 ("Motion").  By and through the Motion Sharareh Rastegar ("Sharareh") seeks to dismiss the

6 First Claim for Relief  [to Avoid and Recover Preferential Transfers Against Sharareh Rastegar],

7 the Second Claim for Relief [To Avoid and Recover Fraudulent Transfers Against Sharareh

8 Rastegar] and the Seventeenth  Claim for Relief [Claim Disallowance] (collectively referred to

9 herein as "Claims")  contained in the "First Amended Complaint to Avoid and Recover

10 Preferential Transfers Pursuant to 11 U.S.C. §§ 547(b), 548(a), 550 and 502" ("FAC").

11

12 **I.**       **<u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>.**

13       Whether Sharareh is a non-statutory insider is the pivotal issue with respect to the First

14 Claim for Relief.  Sharareh moves this Court to dismiss the First Claim for relief on the grounds

15 that the allegations contained in the FAC are insufficient to support a plausible argument that

16 Sharareh is a non-statutory insider.  Not only are the factual allegations sufficient to establish

17 that Sharareh is a non-statutory insider of the Debtor but the statute, legislative authority and

18 established case law fully support a finding that Sharareh is a non-statutory insider of the Debtor,

19 and the transfers are avoidable under 11 U.S.C. § 547(b)(4)(B).

20       The FAC alleges facts sufficient to establish that Sharareh is a non-statutory insider.  For

21 purposes of a Federal Rule of Civil Procedure ("Rule(s)") 12(b) motion to dismiss for failure to

22 state a claim, "all allegations of material fact are accepted as true and should be construed in the

23 light most favorable to the plaintiff."  *Gold v. Morrice, CV 07-00931 DDP (JTLX)*, 2008 WL

24 467619 (C.D. Cal. Jan. 31, 2008) *quoting Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).

25 Taking the allegations as true, it is indisputable that Sharareh is a non-statutory insider.  Rather

26 than arguing the insufficiency of the facts alleged in the FAC, Sharareh attacks the allegations in

27 the FAC as being inaccurate.  Motion, pp. 5-8.  Such attacks are not relevant in the context of a

28 motion to dismiss as all facts alleged must be taken as true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1   1949 (2009).   Not only does the FAC allege facts sufficient to set forth "plausible" claims for

2   relief but all necessary allegations are contained in the FAC and the attachments thereto. Such

3   allegations are not mere conclusions and recitations of the elements of the Claims but paint a

4   detailed picture with supporting documentation of the relationship that existed among the

5   Defendants, Ezri Namvar, the Debtor and Sharareh.

6        With respect to the Second Claim for Relief, Sharareh argues that because Plaintiff

7   admits that Sharareh is a creditor of the Debtor, this Claim for Relief (which is brought in the

8   alternative <u>only</u> if Sharareh claims she is not a creditor) must be dismissed.  Pleading in the

9   alternative is appropriate.  Fed. Rule Civ. P. 8(d)(2).

10       The Third Claim for relief simply seeks to have 11 U.S.C. 502(d) apply should a

11  judgment be rendered in favor of the Plaintiff.  The Third Claim for Relief is properly pleaded.

12       The allegations in the FAC are more than sufficient to establish that Sharareh is a non-

13  statutory insider and that each of the Claims alleged is "plausible."

14

15  **II.   <u>BRIEF STATEMENT OF FACTS RELEVANT TO THE MOTION</u>.**

16       By and through the FAC, the Plaintiff seeks to recover certain transfers made by the

17  Debtor to Sharaheh Rastegar [$2,095,969.98], Roxana Rastegar [$474,640.58], Mahi Rastegar

18  [$43,038.89], Jessica Kimiabakhsh [$82,335.59], Michele Kimiabakhash [86,934.47], Shabnam

19  Kimiabakhash [$122,381.97], the Rastegar Family Trust [$735,100.58] and Solomon Rastegar

20  [$39,698.71], (collectively referred to herein as the "Defendants").  FAC ¶¶ 1, 34 - 41, Exhibits 4

21  - 20[1].  The Defendants received transfers totaling $3,478,383.21 during the 1 year prior to the

22  Petition Date[2] ("Transfers").  *Id.*  Through the FAC, the Plaintiff seeks entry of a judgment

23  avoiding the Transfers pursuant to 11 U.S.C. §§ 547 and/or 548 and recovering the transfers

24

25

26  [1] Exhibits 4 – 20 consist of charts with the date of each transfer, the amount of the transfer, the
    bank statements indicating that the transfer cleared the Debtor's bank account and all backup
27  documentation for the transfers including copies of the checks.

28  [2] All initial capitalized terms not defined herein shall have the meaning ascribed to them in the
    FAC.

1   pursuant to 11 U.S.C. § 550, and disallowing any claim of the Defendants including pursuant to

2   11 U.S.C. § 502(d) until Defendants pay the transfers at issue in full to Plaintiff.

3          Each of the Defendants and the Debtor had a personal, professional and business

4   relationship that was sufficiently close enough for Defendants to gain an advantage attributable

5   to affinity.  The Defendants are non-statutory insiders as a result of each of their relationships to

6   Ezri Namvar ("Namvar") and the Debtor.  FAC ¶¶ 16- 31, Exhibits 1 -3.

7          Prior to the Petition Date, the Debtor had been in business for approximately 20 years.

8   Debtor's general business model was relatively simple and straightforward - Debtor would

9   borrow money from individuals ("Lender Funds"), most often members of the West Los Angeles

10  Persian community (individually hereinafter referred to as a "Namco Lender"), agree to pay such

11  Namco Lender a fixed rate of return, and the Debtor would then either lend those funds to third

12  parties, at interest rates typically six percent or more higher than the cost of capital payable to the

13  Namco Lender, or invest such funds in various real estate projects. FAC ¶ 32.

14         Defendants are all members of a very close knit family in which Solomon Rastegar is the

15  patriarch (the "Family").  Sharaheh Rastegar and Roxana Rastegar are daughters to Solomon

16  Rastegar and Mahi Rastegar is Solomon Rastegar's spouse.   FAC ¶ 16.  The Family held close

17  business ties to the Debtor and treated and considered Namvar as a family member.  FAC ¶¶ 17-

18  24.

19         During each of the transfers at issue, Solomon Rastegar was a very close, personal friend

20  of Namvar.  Solomon Rastegar's and Namvar's relationship reaches back over two decades and

21  Solomon Rastegar regarded and treated Namvar as his son.  FAC ¶¶ 17, 23-24, Exhibit 1.

22  Namvar had a very close relationship with the Family and Namvar viewed and treated the

23  Family as his family.  *Id.*  This close relationship extended to the other members of the Family as

24  well.  Solomon Rastegar referred to himself as "Ezri's best friend" and Namvar referred to and

25  considered Solomon Rastegar to be his "best friend."  FAC ¶ 17.  This close friendship lead to

26  many personal and business relationships between the Family and Namvar.  FAC ¶ 17, 23-24,

27  Exhibit 1.

28

1    Over a period of many years predating the Debtor and Namvar bankruptcies, the Family

2    made a series of **unsecured** loans to Namco.  By August 2008, the total balance owing on the

3    Family loans to Namco was in excess of $18,525,000[3].  FAC ¶ 18, Exhibit 2.

4    Namvar was a limited partner or member of a number of entities in which the Defendants

5    were limited partners or members including but not limited to the following: (a) Flow 7 LLC in

6    which Solomon Rastegar owns a 50% interest and Namvar owns a 50% interest; (b) Amona, Inc.

7    in which Namvar's children own a 50% interest and the Family owns 50% interest; and (c) Wall

8    Street Mart, L.P., a California Limited Partnership ("Wall Street") in which the limited

9    partnership interests were held 49% by Namar and 49% by Rastegar family members. FAC ¶ 19.

10    Namvar was a limited partner along with Shabnam Kimiabakhsh, Solomon Rastegar, and

11    Mahi Rastegar of Wall Street.  Wall Street functioned as a holding company for a handful of

12    valuable commercial real estate investments made by Solomon Rastegar and Namvar over the

13    course of many years. FAC ¶ 20.

14    On or about January 6, 1995, Namvar and Houshang Namvar attended the annual

15    meeting of the board of Directors of Amona Inc., a corporation owned exclusively by members

16    of the Family.  The minutes from this meeting reflect that "After long negotiations it was agreed

17    to increase the paid up Capital to $100,000.  50% by Rastegar Family and 50% by Namvar

18    Family."  Namvar was made president of Amona, Inc. and placed on the board of directors.

19    FAC ¶ 21.

20    The human resources of the Debtor were often used by Amona, Inc. at the request of

21    Solomon Rastegar and Namvar.  For example Hamid Taba was asked to make sure that the

22    books and records of Amona, Inc. were put in order.   Namvar also instructed Solomon Rastegar

23    that Hamid could assist Solomon Rastegar object to the Namco claim against the Wall Street

24    Property in the amount of $12.6 million.  FAC ¶ 22.

25

26    [3] As pointed out numerous times in the Motion, the FAC contains an obvious typographical
error.  The amount loaned to the Debtor by the Family was in excess of $18,525,000, not

27    $18,525.00 (FAC ¶ 18).  Exhibit 2 indicates that the outstanding amount of the loans was
$23,525,000.  In Exhibit 2 which is an email dated November 2008 from Solomon Rastegar to

28    Namvar, Solomon Rastegar states: "After sale of Amona I have 23,525,000 with you.  …the
balance of my account."  FAC, Exhibit 2.

1    Namvar was heavily involved in the Family on a personal and business level.  Also,

2    Solomon Rastegar was the Trustee of the Namvar Charitable Trust.  FAC ¶ 23.

3    Solomon Rastegar was the gatekeeper for the Family with respect to any and all

4    investments in and with the Debtor. FAC ¶¶ 25, 26, Exhibits 1-3.  Solomon Rastegar controlled,

5    funded and was responsible for all accounts of the Defendants (including Sharareh) with respect

6    to the Debtor.  Solomon Rastegar opened each of the Defendants' accounts with the Debtor.

7    Solomon Rastegar himself invested all of the Family's money with Namvar and Solomon

8    Rastegar alone made the decisions concerning investments in and with the Debtor.  All

9    distributions from the Defendants' Namco accounts were made at the direction of Solomon

10   Rastegar.  FAC ¶¶ 25, 27 and Exhibit 1.

11   Solomon Rastegar and the Debtor treated all accounts involving the Family as Solomon

12   Rastegar's accounts and money.  In a December 9th e-mail, Solomon Rastegar states that:

13   **All my** other properties plus the sale of the Big Tract of land were deposited with
     Ezri in total of $25,525,000.00. Now I am without any mean[s] of survival.  Out

14   of this sum 2 million was paid to my daughter in NY [Sharaheh Rastegar] and 5
     M. was in exchange account.

15

16   See FAC ¶ 26 and Exhibit 1.

17   The Debtor made a distribution of $2,000,000 to Sharareh Rastegar at the direction of

18   Solomon Rastegar.  FAC ¶ 27 and Exhibit 2.  Solomon Rastegar directed all distributions from

19   the Family accounts.  Without Solomon Rastegar's consent or blessing no such distributions

20   would be made.  FAC ¶¶ 25, 27 and Exhibits 1-3.  Solomon Rastegar was responsible for

21   directing all investments and distributions on behalf of the Family with respect to Namco.  *Id.*

22   Namvar was the President, sole Director and sole Shareholder of the Debtor and

23   controlled the Debtor in all respects.  FAC ¶ 29.

24   Because of the Family's and Solomon Rastegar's special relationship with Namvar, and

25   Namvar's position with the Debtor and Solomon Rastegar's relationship with the Defendants as

26   the gatekeeper to the Family money, Defendants are nonstatutory insiders pursuant to applicable

27   bankruptcy case law.  FAC ¶ 30.

28

-6-

1    Defendants and the Debtor had a personal, professional and business relationship that

2    was sufficiently close enough for Defendants to gain an advantage attributable to affinity.

3    Defendants are therefore insiders of the Debtor based on the statutory and/or nonstatutory

4    definitions.  FAC ¶¶ 16-31, Exhibits 1-3.

5    The Debtor was insolvent at the time of each of the Transfers.  FAC ¶¶ 42-45.  From

6    2005 through the Petition Date, Debtor operated at a loss and was unable to pay all of its debts as

7    they came due. FAC ¶¶ 43-45.  Prior to one year from the Petition Date, Debtor had creditors

8    whose obligations it was not paying as they became due.  FAC ¶ 46.

9

10    **III.    THE FAC SATISFIES THE APPLICABLE PLEADING REQUIREMENTS.**

11    The FAC fully satisfies the pleading requirements of Rule 8. The FAC contains very

12    detailed allegations regarding Sharareh's insider status (FAC ¶¶ 16-31 and Exhibits 1-3),

13    allegations regarding the Debtor and each of the Transfers at issue (FAC ¶¶ 32-41 and Exhibits

14    4-20), allegations that the Debtor was insolvent entitled (FAC ¶¶ 42-46) as well as specific

15    allegations for each of the Claims (FAC ¶¶ 47-62 and 173-177) which fully and specifically

16    support each of the Claims brought against the Sharareh.  The FAC contains specific allegations

17    of the actions and relationships that establish that Sharareh is a non-statutory insider.  FAC

18    ¶¶ 16-31 and Exhibits 1-3.

19    Contrary to the contentions of Sharareh, the Claims are not based upon mere conclusory

20    statements and formulaic recitations of the elements of each of the Claims nor does the FAC fail

21    to specifically support how Sharareh is a non-statutory insider.  Instead, the FAC completely and

22    fully sets forth in detail facts sufficient to support each of the Claims.

23    Plaintiffs meet the pleading requirements of Rule 8 for each and every element of each of

24    the Claims.  While in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court

25    emphasized that "a plaintiff's obligation to provide the grounds of his entitlement to relief

26    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

27    of action will not do," *Id.* at 555-556 (internal quotation marks and alterations omitted), the

28    Supreme Court also made it clear that its holding did "not require heightened fact pleading of

1    specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

2    As set forth in *Ashcroft v. Iqbal*:

4        To survive a motion to dismiss, a complaint must contain **sufficient factual
         matter, accepted as true, to state a claim to relief that is plausible on its
         face**. [Citation.]  A claim has facial plausibility when the plaintiff pleads
         factual content that allows the court to draw the reasonable inference that the
         defendant is liable for the misconduct alleged. [Citation.] The plausibility
         standard is not akin to a "probability requirement," but it asks for more than a
         sheer possibility that a defendant has acted unlawfully.

8    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(emphasis added).

9        The FAC satisfies the "plausibility standard" and is "in the ballpark" of the requirements

10   as presented in *Twombly* and *Iqbal*.   That is, the facts alleged demonstrate more than a sheer

11   possibility that a defendant has acted unlawfully.  *Iqbal*, 129 S. Ct. at 1949; *Twombly,* 550 U.S.

12   544, 127 S.Ct. 1955 (2007).  **Courts in the 9th Circuit have not read *Twombly* to alter**

13   **fundamentally the requirement of notice pleading, which is designed to "give the defendant**

14   **fair notice."** *Gold v. Morrice*, CV07-00931 DDP(JTLX), 2008 WL 467619 (C.D. Cal. Jan. 31,

15   2008) *quoting Twombly, at 1964.*  The other standards set forth in previous case law in relation

16   to motions to dismiss survive the rulings in *Twombly* and *Iqbal*.  "Specific facts are not

17   necessary; the statement need only give the defendant[s] fair notice of what… the claim is and

18   the grounds upon which it rests."  *Gross Belsky Alonso LLP v. Henry Edelson*, C 08-4666 SBA,

19   2009 WL 1505284 (N.D. Cal. May 27, 2009) (*citing Twombly* and *Iqbal*); *see also Holloway v.*

20   *Best Buy Co., Inc.*, C 05-5056 PJH, 2009 WL 1533668 (N.D. Cal. May 28, 2009) (which cites

21   *Twombly* and *Iqbal*); *In re Jamster Mktg. Litig.*, MDL 1751, 2009 WL 1456632 (S.D. Cal. May

22   22, 2009) (*also citing Twombly* and *Iqbal*);  *Connolly v. Pillsbury Winthrop Shaw Pittman LLP*

23   *(In re SonicBlue, Inc.)*, No. 08-5084, 2008 WL 2875407 (Bankr. N.D.Cal. July 23, 2008).

24       Even after *Twombly*, Rule 8 merely requires that a claim be pled so as to give a defendant

25   fair notice of what the claim is and the grounds upon which it rests.  Notice pleading, regardless

26   of the context, requires only general notice of a claim.  *Id.*  A plaintiff must plead only broad

27   allegations of the *prima facie* elements of an alleged violation and "enough facts to state a claim

28   to relief that is plausible on its face" and "raise a right to relief above the speculative level."  *See,*

-8-

1  e.*g.*, *Williams v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*citing Twombly*, 550

2  U.S. 544 (2007)). **What Rule 8 does not require is detailed factual pleading.** *Twombly*, 127

3  S. Ct. at 1964, 1974.

4          Applying this standard to the FAC, it is indisputable that the requisite allegations are

5  contained in the FAC, and that Plaintiff has fully set forth with particularity the First, Second and

6  the Seventeenth Claims for Relief.  The FAC provides fair notice to Sharareh as it sets forth in

7  tremendous detail each element of each of the Claims (FAC ¶¶16, 34, 42-62, 173-177, Exhibits 4

8  and 5) and the actions and circumstances that give rise to Shareheh's insider status (FAC ¶¶ 16-

9  31, Exhibits 1-3).  The FAC provides Sharareh with notice of the claims that are brought against

10  her and the legal and factual grounds for such claims.  *Id.* The FAC seeks to avoid Transfers

11  made by the Debtor to Sharareh.  FAC ¶¶ 16-31, 34, 42-62, 173-177, Exhibits 1-5.  As the

12  Transfers at issue arose outside the 90-day preference period, the Plaintiff seeks to avoid such

13  Transfers under 11 U.S.C. § 547(b)(4)(B).    In addition to providing each and every detail of the

14  Transfers at issue (date, amount, cancelled checks, wiring  instructions, bank statements) and

15  specific details about the Debtor's insolvency at the time of each of the Transfers (FAC ¶¶ 34,

16  42-62, Exhibits 4-5), the FAC provides specific instances and factual allegations describing the

17  insider status of Sharareh.  FAC ¶¶ 16-31, Exhbits 1-3.   The very fact that Sharareh is able to

18  provide such detailed legal and factual argument regarding the allegations in the FAC (Motion,

19  pp. 5 – 8, 16), demonstrates that the FAC sufficiently sets forth the Claims and provides

20  Sharareh with sufficient information upon which to defend each of the Claims.

21

22  **IV.**     **THE FIRST CLAIM FOR RELIEF – TO AVOID AND RECOVER**

23          **PREFERENTIAL TRANSFERS AGAINST SHARAHEH RASTEGAR IS**

24          **SUFFICIENTLY PLEADED.**

25          The sole argument raised by Sharareh in support of the dismissal of the First Claim for

26  Relief is that the FAC fails to plead facts sufficient to establish that it is "plausible" that Sharareh

27  is an insider.  Motion, p. 11:4-9.  Plaintiff concedes that Sharareh is not an insider under Section

28  101(31)(B) and (E) of the Bankruptcy Code and is not a "per se insider."  Sharareh is, however, a

1    non-statutory insider and the FAC contains sufficient non-conclusory factual allegations

2    supporting Sharareh's non-statutory insider status.  FAC ¶¶ 16-31, Exhibits 1-3.

3        The "determination of insider status is a question of fact." *In re Friedman,* 126 B.R. 63,

4    67 (9th Cir. BAP 1991); *In re Demko*, 264 B.R. 404, 408 (Bankr. W.D. Penn. 2001) ("[n]on-

5    statutory insider status is a fact-intensive inquiry that must be determined on a case-by-case

6    basis.")  Thus, as long as sufficient facts are pleaded setting forth the basis for the non-statutory

7    insider status of the Defendants (including Sharareh), dismissal of the First Claim for Relief is

8    inappropriate and the Motion should be denied.

9        **A.    Elements of Insider Status.**

10        A bankruptcy trustee "may avoid any transfer of an interest of the debtor in property" if,

11    *inter alia,* the transfer was made "on or within 90 days before the date of the filing of the

12    petition." 11 U.S.C. § 547(b)(4)(A).  If, however, the creditor was an "insider" at the time of the

13    transfer, then the trustee can avoid any transfer made "between ninety days and one year before

14    the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(B).  The Bankruptcy Code lists

15    entities that are considered "insiders" when the debtor is a corporation:

16        "insider" includes—

17        …

18        (B) if the debtor is a corporation—

19        (i) director of the debtor;

20        (ii) officer of the debtor;

21        (iii) person in control of the debtor;

22        (iv) partnership in which the debtor is a general partner;

23        (v) general partner of the debtor; or

24        **(vi) relative of a general partner, director, officer, or person in control of the
25    debtor.**[4]

26

27

28    ---
[4] Solomon Rastegar along with the Family were the de facto relatives of Namvar, the President,
sole Director and sole Shareholder of the Debtor.  FAC ¶¶ 16, 17, 23, 24, 29.

-10-

11 U.S.C. § 101(31) (emphasis added).  The definition of "insider" is not limiting. *U.S. Medical Inc.*, 531 F.3d. 1272, 1276-77 (10th Cir. 2008); *Enterprise Acquisition Partners, Inc.*, 319 B.R. 626 (9th Cir. B.A.P. 2004); *In re Friedman,* 126 B.R. 63, 69–70 (9th Cir. BAP 1991).  "The use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition." *In re Friedman,* 126 B.R. 63, 69–70 (9th Cir. BAP 1991).

There are two distinct types of insiders, those entities specifically mentioned in the statute ("relative," "partnership," "general partner," and "corporation") – per se insiders, and "non-statutory insiders" – those not listed in the statutory definition, but who have a "... sufficiently close relationship with the debtor that ... conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Miller Ave. Profl & Promotional Servs.* v. *Brady (In re Enter. Acquisition Partners),* 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004), *quoting Wilson v. Huffman,* 712 F.2d 206, 210 (5th Cir.1983); *see also U.S. Medical Inc.*, 531 F.3d. 1272 (10th Cir. 2008); *In re Anderson,* 165 B.R. 482, 485 (Bankr.D.Or.1994).  "A party can be an insider even though not included in one of the categories listed in the definition." *Barnhill v. Vaudreuil (In re Busconi),* 177 B.R. 153, 158 (Bankr. D. Mass. 1995); *See also OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp., 389 B.R. 357, 366 (D. Del. 2008)(* "courts have uniformly held that the Bankruptcy Code's definition is merely illustrative and that the term 'insider' must be flexibly applied on a case-by case basis.");  *Schreiber v. Stephenson (1n re Emerson),* 235 B.R. 702, 706 (Bankr. D.N.H. 1999) ("Courts have widely agreed that Congress did not intend to limit the classification of insiders to the statutory definition").

The legislative history pertaining to the definition of "insider" clearly states that:

> [a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny *than those dealing at arms [sic] length with the debtor.*

*S.Rep. No. 95-989*, at 25 (1978*), 1978 U.S.Code Cong. & Admin.News* 5787, 5810; *H.R.Rep. No. 95-595,* at 312 (1977) (emphasis added).  Courts have developed a few guidelines for determining non-statutory insider status.  Courts look to the types of insiders listed in the statute for guidance in determining who qualifies as a non-statutory insider.  *In re Busconi,* 177 B.R. at

-11-

1    158. "It would seem from these examples that Congress intended to include **those whom the**

2    **debtor looked** kindly upon and those who have significant influence on the debtor even though

3    not 'in control' of the debtor." *Id.* (emphasis added).  No finding of "actual control" is necessary

4    to declare an entity a non-statutory insider.  *Schubert* v. *Lucent Tech., Inc. (In re Winstar Comm.,*

5    *Inc.),* 554 F.3d 382,396 (3rd Cir. 2009).  A creditor does not need to have a "direct relationship

6    with the debtor (other than as creditor)" as long as they have a "close personal relationship with

7    persons who are statutory insiders." *Hirsch* v. *Tarricone (In re Tarricone),* 286 B.R. 256,263-64

8    (Bankr. S.D.N.Y. 2002).

9         Such "non-statutory insiders" are those with a "sufficiently close relationship with

10   the debtor that [their] conduct is made subject to closer scrutiny than those dealing at arm's

11   length with the debtor." *In re Enter. Acquisition Partners,* 319 B.R. at 631 (internal quotation

12   omitted). "The inquiry then is whether there is a close relationship *and* whether there is anything

13   other than closeness to suggest that any transactions were not conducted at arm's length."

14   *In re U.S. Med. Inc.,* 531 F.2d 1272, 1277 (10th Cir. 2008).  This is a "fact-intensive"

15   determination that "must be decided on a case-by-case basis." *Rainsdan v. Farson (In re*

16   *Farson),* 387, B.R. 784, 792 (Bankr. D. Idaho 2008).  While it is true that "not every creditor-

17   debtor relationship attended by a degree of personal interaction between the parties rises to the

18   level of an insider relationship," *In re Friedman,* 126 B.R. 63,70, "the case law has revealed" that

19   "personal relationships can ... serve as the basis for 'insider' status." *Freund  v. Heath (In re*

20   *McIver),* 177 B.R. 366 (Bankr. N.D. Fla. 1995).  While mere friendship is not a sufficient basis

21   for declaring someone to be an insider, friendship *can,* however, be taken into account in

22   determining insider status. *Gordon* v. *Vongsamphanh (In re Phongsavath),* 328 B.R. 895, 898

23   (Bankr. N.D. Ga. 2005); *Castellani v. Kahne (In re Kucharek),* 79 B.R. 393, 397(Bankr. E.d.

24   Wisc. 1987).

25         In this case it is evident from the allegations in the FAC not only that Sharaheh had a

26   sufficiently close relationship with the Debtor through Namvar but that the transactions between

27   the Debtor and the Defendants including Sharaheh were not arm's length transactions.  FAC

28   ¶¶ 18-28, 33, Exhibits 1-3.  The Family had a quasi-familial relationship with Namvar, the sole

1   shareholder and president of Namco.  FAC ¶¶ 16-17, 23, 24, 29, 31, Exhibit 1.  The Family was

2   Namvar's *de facto* family, which acted similarly to a real family (i.e. loaned money to one

3   another, were involved in one another's companies, gave each other advice and guidance, and

4   interacted regularly).  FAC ¶¶ 16-31, Exhibits 1-3.  As Solomon Rastegar maintained complete

5   control of the accounts of all of the Defendants including Sharareh and treated each of these

6   accounts as his own, the relationship of Solomon Rastegar must be imputed to the Family as a

7   whole.  FAC ¶¶ 25-28, Exhibits 1-3.  No money was loaned or invested by Sharareh in Namco

8   independent of Solomon Rastegar.  Solomon Rastegar treated Sharareh's Namco account as his

9   own and no distributions were made without Solomon Rastegar's consent.  *Id*.  Thus, Sharareh

10  qualifies under the pseudo-familial relationship test.  <u>See</u> *In re Phongsavath*, 328 B.R. at 897-98.

11          The FAC also establishes that the Transfers at issue and the transactions between these

12  parties were not conducted at arm's length.  FAC ¶¶ 18-22, 24, 32.  Such elements, as

13  summarized in *In re Emerson,* 235 B.R. at 707, include whether: (1) "the loans were made on an

14  unsecured basis and without inquiring into the debtor's ability to repay the loans"; (2) "the

15  transferee knew the debtor was insolvent" but made the loans anyway; (3)  "there were numerous

16  loans between the parties"; (4) "there were any strings attached" on how the money could be

17  used;  (5) "the loans were commercially motivated"; (6) "the transferee had an ability to control

18  or influence the debtor";  (7) "there was a personal, business, or professional relationship ...

19  allowing the transferee to gain an advantage such as that attributable simply to affinity"; and (8)

20  "there is evidence of a desire to treat the transferee differently from all other general unsecured

21  creditors."  *Id.*

22          **B.**      <u>**Sharareh is a Non-Statutory Insider and All Necessary Facts Establishing the**</u>

23                  <u>**Insider Relationship Are Set Forth in the FAC.**</u>

24          In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all

25  factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's

26  favor[5].  *North Slope Borough v. Rogstand*, 126 F.3d 1224, 1228 (9th Cir. 1997) (*citing Love v.*

27

28  _____
    [5]  Despite acknowledging that a Rule 12(b)(6) motion requires the Court to take all factual
    allegations of a complaint as true, the Motion devotes a number of pages to refuting the

1   *United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)).   In support of the "insider" status necessary

2   to avoid a transfer under 11 U.S.C. § 547(b)(4)(B) the FAC is replete with supporting factual

3   allegations.  FAC ¶¶ 16-31, Exhibits 1-3.  The allegations in the FAC demonstrate that it is

4   plausible that Solomon Rastegar, as the patriarch of the Family, controlled the funds of the

5   Family and was the gatekeeper for all of the accounts established at Namco.  No investments

6   were made or disbursements made to any member of the Family including Sharareh, without

7   Solomon Rastegar's approval or at his request.  FAC ¶¶ 25-28, Exhibits 1-3.  Solomon Rastegar

8   controlled and owned all of the Namco accounts held by the Defendants.  FAC ¶¶ 25-28, Exhibit

9   1-3.  The FAC alleges that Solomon Rastegar as well as the other Defendants including

10  Sharareh, had a pseudo familial relationship with Namvar.  FAC ¶¶ 16, 17, 23, 24, 29, 31,

11  Exhibit 1.  Solomon Rastegar often referred to Namvar as his son and Namvar considered

12  Solomon Rastegar his best friend.  ¶ 17.  Namvar treated the Family as his own. *Id.*  Thus,

13  Solomon Rastegar had a pseudo familial relationship with the director, officer and person in

14  control of the Debtor – Namvar.  None of the Transfers and other business dealings were arms'

15  length transactions.  FAC ¶¶ 18-22, 24, Exhibits 1, 3.   But for the special "insider" relationship

16  between the Debtor and the Family, the Transfers would not have been made.  The FAC when

17  examined in its entirety including all of the Exhibits paints a very detailed and clear picture

18  showing that it is plausible that Sharareh is a non-statutory insider of the Debtor.

19          The FAC sets forth ample facts so that a court could find that it is plausible that Sharareh

20  is an insider.  Sharareh knows exactly what the claims of the Plaintiff are and is able to defend

21  the claims.  No more needs to be pleaded.

22  ///

23  ///

24  ///

25  ///

26

27  allegations in the FAC.  Motion, pp. 5-8.  None of this is relevant for ruling on the Motion.  The
    very fact that Sharareh is able to provide such detailed legal and factual argument regarding the

28  allegations in the FAC, demonstrates that FAC sufficiently sets forth the Claims and provides
    Sharareh with sufficient information upon which to defend.

## V.     THE SECOND CLAIM FOR RELIEF – TO AVOID AND RECOVER FRAUDULENT TRANSFERS IS SUFFICIENTLY PLEADED.

The Second Claim for Relief is pled in the alternative.  FAC ¶ 57.  Rule 8(d)(2) states that:

> A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

Fed. R. Civ. P. 8(d)(2).   The Second Claim for relief is just that, a pleading in the alternative, in which, the Plaintiff pleads that if Sharareh is not a creditor of the Debtor, then the Trustee seeks to avoid and recover the Transfers as constructively fraudulent transfers under  11 U.S.C. § 548.  FAC ¶ 57.

The Second Claim for relief is properly pled and withstands the Motion.  The Second Claim for Relief alleges that if Sharareh is not a creditor of the Debtor, Sharareh received Transfers in the amount of $2,095,696.98 for which the Debtor did not receive reasonably equivalent value at a time that the Debtor was insolvent.  FAC ¶¶ 34, 42-46, Exhibit 4 and 5.  If Sharareh admits in her answer that she is a creditor of the Debtor and that she received the Transfers in the amount of $2,095,696.98 on account of antecedent debt, the Plaintiff will not proceed with this claim for relief.  Until such time as the Sharareh makes such an admission, the Second Claim for Relief is appropriate and is fully and sufficiently pleaded.

## VI.     THE SEVENTEENTH CLAIM FOR RELIEF – CLAIM DISALLOWANCE –  IS SUFFICIENTLY PLEADED.

The Seventeenth Claim for Relief is properly and sufficiently pleaded.  This Claim for relief incorporates all of the specific allegations contained in the FAC which relate to each of the Defendants.  The Seventeenth Claim for Relief simply seeks disallowance of the claims that any of the Defendants including Sharareh hold against the Debtor pursuant to 11 U.S.C. § 502(d).  Section 502(d) provides that:

1
2
3

…the court shall disallow any claim of any entity from which property is recoverable under section …550, 547, 548…of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section…550 …of this title.

4    11 U.S.C. § 502(d).  This claim is sufficiently pleaded.  FAC ¶¶ 2, 173-177.

5    Sharareh contends that the Seventeenth Claim for Relief fails to identify any claims

6    sought to be disallowed or the parties that filed the claims at issue.  Motion, pp. 4:21-5:3.  This is

7    simply incorrect.  Paragraph 2 of the FAC identifies the claims that are the subject of the

8    Seventeenth Claim for Relief as follows:

9
10

To the extent that the Defendants have filed a proof of claim or have a claim listed on Debtor's schedules as undisputed, liquidated and non-contingent, or have otherwise requested payment from Debtor (collectively, the "Claims")…

11    Sharareh's reliance on FRBP 3007 is inappropriate, dealing as the rule does with the

12    claims objection process.  Further, FRBP 3007(b) expressly permits claim objections being

13    "included" in adversary proceedings.  This claim for relief is properly pled.

14

15    **VII.    LEAVE TO AMEND.**

16    To the extent this Court is inclined to grant the Motion, Plaintiff requests leave to amend.

17    In dismissing for failure to state a claim, "a district court should grant leave to amend …unless it

18    determines that the pleading could not possibly be cured by the allegation of other facts."  *Doe v.*

19    *United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations omitted); *see also New York State*

20    *Teachers' Ret. Sys. v. Fremont Gen. Corp.*, 2:07-CV-05756FMCFFMX, 2008 WL 4812021

21    (C.D. Cal. Oct. 28, 2008); *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946

22    (9th Cir. 2005); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

23    While Plaintiffs believe the FAC is more than sufficient to withstand Sharareh's attacks, should

24    the Court be inclined to grant the Motion, Plaintiff requests leave to amend to address any

25    deficiencies noted by the Court.

26    ///

27    ///

28    ///

**VIII.    <u>CONCLUSION</u>.**

For the reasons set forth above, the Motion must be denied in its entirety.  In the alternative, the Plaintiff respectfully requests an opportunity to file an amended complaint to correct any deficiencies in the FAC that this Court determines exist.


Dated:  July 5, 2011                                    EZRA BRUTZKUS GUBNER LLP


By:  <u>/s/ Robyn B. Sokol</u>
        Robyn B. Sokol
Attorneys for Plaintiff, Bradley D. Sharp,
Chapter 11 Trustee

| In re:  NAMCO CAPITAL GROUP INC. - Debtor | CHAPTER  11 |
|---|---|
| | CASE NUMBER: 2:08-bk-32333-BR |
| Bradley Sharp, Chapter 11 Trustee  v. Sharaheh Rastegar, et al. | ADV. No.: 2:11-ap-01397-BR |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, California 91367.**

A true and correct copy of the foregoing document described **PLAINTIFF'S OPPOSITION TO MOTION BY SHARAREH RASTEGAR TO MOTION DISMISS FIRST AMENDED COMPLAINT AGAINST HER TO SET ASIDE AND RECOVER PREFERENTIAL TRANSFERS**    will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 5, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **United States Trustee (LA) -** ustpregion16.la.ecf@usdoj.gov
- **Lisa N. Nobles**    LNobles@LGBFirm.com, MSaldana@LGBFirm.com;cscott@LGBFirm.com
- **John P. Reitman**    jreitman@lgbfirm.com, pswierszcz@lgbfirm.com
- **Monika S Wiener**    mwiener@dl.com

☐    Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **July 5, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows..

## BY U.S. MAIL

Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA  90012

☐    Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 5, 2011 | NIKOLA A. FIELDS | /s/ Nikola A. Fields |
|---|---|---|
| Date | Type Name | Signature |