LANDAU GOTTFRIED & BERGER LLP
JOHN P. REITMAN (State Bar No. 80579)
LISA N. NOBLES (State Bar No. 233723)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Attorneys for defendant Sharareh Rastegar

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, Inc., a California corporation,<br><br>Debtor | Case No.: 2:08-bk-32333-BR<br>Chapter 11<br>Adv. Proc. No. 2:11-ap-1397-BR<br><br>**DEFENDANT SHARAREH RASTEGAR'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST HER** |
| BRADLEY D. SHARP, solely in his capacity as Chapter 11 Trustee of NAMCO CAPITAL GROUP, INC.,<br><br>Plaintiff,<br>vs.<br>SHARAHEH RASTEGAR, an individual; ROXANA RASTEGAR, an individual; MAHI RASTEGAR, an individual; JESSICA KIMIABAKHASH, an individual; MICHELE KIMIABAKHASH, an individual; SHABNAM KIMIABAKHASH an individual; SOLOMON RASTEGAR, individually and as Trustee of the RASTEGAR FAMILY TRUST; and RASTEGAR FAMILY TRUST,<br><br>Defendants. | **Hearing and Status Conference Date:**<br>Date:  July 19, 2011<br>Time:  2:00 p.m.<br>Place: Courtroom 1668<br>         Edward R. Roybal Federal Building<br>         and Courthouse<br>         255 East Temple Street<br>         Los Angeles, California 90012<br><br>Judge:  Hon. Barry Russell |

LANDAU
GOTTFRIED &
BERGER LLP

Defendant Sharareh Rastegar ("Sharareh") hereby submits this Reply in support of her Motion to Dismiss (the "Motion") plaintiff's First Amended Complaint ("FAC"). Plaintiff conflates conclusory statements and "well pleaded facts."

## I.

## ARGUMENT

### A. The Applicable Law

Plaintiff's opposition ("Opp.") misconstrues Sharareh's arguments. Plaintiff claims that "[r]ather than arguing the insufficiency of the facts alleged in the FAC, Sharareh attacks the allegations as being inaccurate." Opp. 2:25-27. The Motion, however, is not based on a dispute as to the facts that are alleged. Rather, the thrust of the Motion is that plaintiff's "well pleaded facts" (*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) ("*Iqbal*")) do not meet the requirement of sufficient "factual content [as opposed to conclusions] that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id., citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 550 (2007) ("*Twombly*"). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949, *quoting Twombly,* 550 U.S. at 557.

Plaintiff criticizes Sharareh for expending the effort to quote plaintiff's FAC (which includes all of the exhibits to it) as they relate to her. She did so, however, for good reason. It was not to argue whether the "facts" were true or not; rather, it was to show that the FAC contains virtually no factual content as it applies to Sharareh and that the allegations are merely conclusions couched as if they were facts. As explained in *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009)[1]:

> "[B]are assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth. [*Iqbal*, 129 S. Ct. 1937,] at 1951 (quoting *Twombly,* 550 U.S. at 555). Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because

---

[1] The opinion in *Moss* was filed July 19, 2009. Each and every case cited by plaintiff predates that opinion. Notably, plaintiff ignores the controlling Ninth Circuit law in *Moss*.

they do nothing more than state a legal conclusion -- even if that conclusion is cast in the form of a factual allegation. *Id.* Thus, in *Iqbal*, the Court assigned no weight to the plaintiff's conclusory allegation that former Attorney General Ashcroft and FBI Director Mueller knowingly and willfully subjected him to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id.* (quoting plaintiff's complaint).

After dispatching the complaint's conclusory allegations, the [*Iqbal*] Court elaborated on *Twombly's* plausibility standard. "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.* With that standard in mind, we turn to Plaintiffs' Amended Complaint.

Recently, in *Title Fremont Reorganizing Corp. v. Fed. Ins. Co.*, 2010 U.S. Dist. LEXIS 14675 *2-3 (C. D. Cal. 2010), the court stated:

First, the Court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." [*Iqbal*, 129 S. Ct. at 1440]. Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

*Title Fremont* is fully consistent with the requirement of *Twombly* (a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action . . ." 550 U.S. at 555 (citation omitted)) and controlling Ninth Circuit law: "'The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("*Gilead*")(citation omitted).

Finally, in ruling on the Motion, the Court must accept as true all of the "well pleaded facts" in the FAC. "[W]hen ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court may take judicial notice." *Davenport v. Bd. Of Trs.*, 2009 U.S. Dist. LEXIS 26946,*18-19 (E.D. Cal. Mar. 31, 2009) ("*Davenport*"); *Gilead*, 536 F.3d at 1055 ("'The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'"). For purposes of determining the sufficiency of the FAC, and plaintiff's ability to ever assert a plausible claim for relief, the Court must consider both the "well pleaded facts" in the FAC and in the exhibits which are incorporated into the claims for relief against Sharareh. As explained below, those uncontradicted facts and exhibits do not support the plausibility of any such claim.

### B. The First Claim for Relief, Non-Statutory Insider Preference[2], Against Sharareh is Fatally Defective and Must be Dismissed

#### 1. FAC Allegations

Turning to the FAC, it is clear that it does not allege "well pleaded facts" from which this Court may reasonably infer the plausibility, as opposed to the mere possibility, that Sharareh is a non-statutory insider of Namco who would be liable to repay any "preferences" received from Namco more than 90 days but less than one-year prior to its bankruptcy:

> FAC, ¶ 16: Plaintiff alleges "on information and belief" that "Defendants" (presumably including Sharareh) "are friends of the Debtor [Namco – an assertion which makes no sense]," that "all [Defendants] are members of a very closely knit

---

[2] Plaintiff has abandoned his statutory insider preference claim against Sharareh. Opp. 9:27-28.

family and that Solomon Rastegar is the patriarch [i.e., the oldest member of the group] of the Rastegar . . . family."

"Information and belief" allegations require more than speculation. *See, e.g.,* Fed. R. Civ. P. Rule 11(b)(3). Of course, there are no "well pleaded facts" to support these conclusory allegations. The allegations that Sharareh is a member of the Rastegar family and that Solomon Rastegar ("Solomon") may have had a personal relationship with Ezri Namvar ("Namvar") do not lead to a plausible inference that Sharareh had any "relationship" with the debtor ("Namco") other than as a lender of money to it.

> FAC, ¶ 17: "Plaintiff is informed and believes . . . Ezri Namvar had a very close relationship with the Family [presumably including Sharareh] and Ezri Namvar viewed and treated the Family as his family. . . Solomon Rastegar referred to himself as 'Ezri's best friend' and Namvar referred to and considered Solomon Rategar [sic] to be his 'best friend' as well. This close friendship lead to many personal and business relationships between the Family and Namvar."

The only "factual" basis for asserting that Namvar viewed Sharareh as part of his "family" and that "[t]his close friendship lead to many personal and business relationships between the Family [*i.e.,* Sharareh] and Namvar" is Namvar's alleged lengthy relationship with Solomon. While a close relationship between Namvar and Solomon may raise a "possibility" of a close relationship between Namvar and Sharareh, that is far from a "plausible inference" that such was the case or that Sharareh had any ability to exert significant influence over Namvar. Based on the facts alleged in the FAC, it is equally possible that Namvar's only relationship with Sharareh was an arm's-length lender/borrower relationship in which Namvar treated Sharareh no differently than his other victims.

> FAC, ¶ 19: "Ezri Namvar was a limited partner or member of a number of entities and/or in which the Defendants were limited partners or members including by not limited to the following: (a) Flow 7 LLC in which Solomon Rastegar owns a 50% interest and Ezri Namvar owns a 50% interest; (b) Amona, Inc. in which Ezri Namvar's childrent [sic] own a 50% interest and the Family owns 50% interest; and (c) Wall Street Mart, L.P. a California Limited Partnership ("Wall Street") in which the limited partnership interests were held 49% by Ezri Namar [sic] and 49% by Rastegar family members."

While plaintiff alleges that Rastegar family members were owners of businesses in which Namvar also was an owner, plaintiff does not allege any "facts" from which the Court plausibly may infer that those family members included Sharareh or that any such business relationship created a special relationship by which Sharareh was able to extend any meaningful influence over Namco which resulted in Sharareh's receiving preferential treatment.

> FAC, ¶ 27: "The Debtor made a distribution of $2,000,000 to Sharareh Rastegar at the request of Solomon Rastegar. . . . Exhibit "2" is an e-mail dated June 25, 2008 from Sharaheh [sic] Rastegar to Hamid Taba confirming Hamid Taba's conversation with Solomon Rastegar directing the wiring of funds to Sharareh Rastegar. This e-mail demonstrates that it was Solomon Rastegar that directed all distributions from the Family accounts. Without Solomon Rastegar's consent or blessing no such distributions would be made.. . .."

Merely because Solomon spoke with a purported Namco representative about wiring money to Sharareh does not create a plausible inference that Solomon controlled Namco's payments. Indeed, any such inference is contradicted by FAC Ex. 2 in which it is Sharareh who gives directions regarding the payment, and plaintiff's further allegation that the payment was made as directed by Sharareh. FAC Ex 5 (p. 52). Under controlling law, those exhibits are as much a part of the FAC as are plaintiff's other factual allegations. *See, Davenport and Gilead, supra.*

> FAC, ¶ 30: "Because of the Family's and Solomon Rastegar's special relationship with Namvar and Namvar's position with the Debtor and Solomon Rastegar's relationship with the Defendants and the gatekeeper to the Family money, Defendants are . . . nonstatutory insiders pursuant to applicable bankruptcy case law."

> FAC, ¶ 31: Defendants and the Debtor had a personal, professional and business relationship that was sufficiently close enough for Defendants to gain an advantage attributable to affinity. Defendants are therefore insiders of the Debtor based on statutory and/or nonstatutory definitions."

As set forth above, the FAC presents no "well pleaded facts" from which this Court may plausibly infer that Sharareh was a "non-statutory insider" of Namco. At its very best, the FAC's allegations are nothing more than the conclusion that "the sins of the father shall be visited upon the [daughter] . . .." That is not sufficient evidence to move plaintiff's allegations from the mere

possibly to the plausibly that Sharareh is an insider of Namco.

### 2. Plaintiff's Faulty Legal Analysis

Plaintiff relies on the language of 11 U.S.C. §101(31)(vi) "relative of a general partner, director, officer, or person in control of the debtor" to support his claim that Sharareh was a "de facto relative of Namvar, the President, sole Director and sole Shareholder of the Debtor." Opp., 10:24-25, 28 (fn.4). He then cites a number of cases for the proposition that "one who has a sufficiently close relationship with the debtor" may be a non-statutory insider of the debtor (*id.*, 10:21-25), but ignores the necessary linkage – that the "close personal relationship" must include the ability to exert significant influence on the debtor, so as to suggest that the transactions in issue were not conducted at arm's length. *See* Opp., 12:1-13 (and cases cited therein).

Plaintiff cites *Hirsch v. Tarricone (In re Tarricone)* ("*Tarricone*"), 286 B.R. 256, 263-64 (Bankr. S.D.N.Y. 2002) for the proposition that "[a] creditor does not need to have a 'direct relationship with the debtor (other than as a creditor)' as long as they have a 'close personal relationship with persons who are statutory insiders.'" Opp., 12:5-8. However, a review of the factors in *Tarricone* only emphasizes the facts that plaintiff fails to allege in his complaint. The court focused on a number of usual factors regarding the $200,000 loan from the defendant to the debtor:

> Virtually everything about this loan was unusual, if not inexplicable. Why would [the debtor] turn to [the defendant], an individual who had never made a loan to or transacted business with [the debtor], for a commercial loan? Why would [the debtor] borrow $200,000 at year-end for a term of 39 days? Why would a financially sophisticated individual like [the defendant], with a lifetime experience as an entrepreneur and businessman, who had never engaged in the business of lending money, make such a loan? Why would a person of [the defendant's] experience, who knew that in the real world of commerce lenders extend credit at the prime rate only to the most creditworthy corporate borrowers, lend $200,000 to [the debtor] at the prime rate?

*Tarricone* at 271-72. The court also found it significant that the loan was secured by personal guarantees of insiders. Ultimately, the court ruled that the defendant was a non-statutory insider of the debtor.

> The ultimate test which courts should apply in subjecting the participants in a particular transaction to the "closer scrutiny than those dealing at arm's length with the debtor" is whether the creditor is as likely to receive preferential treatment as the statutory insiders enumerated by Congress in subsections (i) – (iv) of Section 101(21)(B). [The defendant] meets this test. On the facts in this

> case the likelihood of [the defendant's] receiving preferential treatment was at least as great as officers, directors and relatives, all of whom are statutory insiders, enhanced as it was by the personal guarantees of [the debtor's] President and her father, both of whom were statutory insiders with the power and a compelling motive to cause [the debtor] to repay [the defendant] so as to avoid personal liability for themselves.

*Tarricone* at 275. By contrast, the FAC pleads no facts which demonstrate that Sharareh was treated any differently than any of the other victims who lent money to Namco. Finally, plaintiff attempts to rely on the factors stated in *In re Emerson*, 235 B.R., at 707 to support his non-statutory insider claim against Sharareh. *Id.*, 13:11-21.

### 3. Sharareh's Analysis

When applied to the undisputed facts of the FAC, none of plaintiff's cited authorities create a plausible inference that Sharareh is a non-statutory insider of Namco. Specifically, 11 U.S.C. § 101(31)(vi) does not suggest that a relative of a relative of a person in control of a debtor may be an insider. Nor are there any "well pleaded facts," as opposed to mere conclusions, in the FAC to support a plausible inference that Sharareh, or for that matter Solomon, had any control or influence over Namvar or Namco beyond that which any other creditor may have had (indeed, the FAC contains no facts whatsoever which show that Sharareh or any of her relatives obtained any preferential treatment). That there was no such control or influence is demonstrated by Solomon's pleas for financial assistance which were ignored by Namvar and Namco. FAC, Ex. 1.

Similarly, plaintiff's reliance on the *In re Emerson*, factors is unavailing. Plaintiff does not explain how those factors purport to apply to Sharareh and there are no facts alleged from which this Court may plausibly infer that Sharareh received any preferential treatment by Namco, that there was any special business arrangement between her and Namco, that she had any special information about Namco, or that she was in any way unlike Namco's other lenders.

Finally, while plaintiff insists that "Namvar treated the Family as his own" (Opp., 14:12), that is not what the "well pleaded facts" say – FAC, Ex. 1 states: "In 1990 after my son Shahab died I have hoped to find someone I could replace as my son. I met Ezri and went to him as a father and asked him to replace my lost son and help me . . .." This admitted fact supports the reverse plausible inferences: It is Solomon who wanted to treat Namvar as part of his (Solomon's) family; Namvar did

not treat Sharareh as part of his family, and Namvar simply took advantage of Solomon and the members of his family, as he did other creditors. As Solomon complained: "Ezri has treated me unfairly." *Id.*

Simply stated, plaintiff has alleged no facts from which this Court, relying on its experience and common sense, may reasonably infer the plausibility, as opposed to the possibility, that Sharareh is a non-statutory insider of Namco for the purposes of plaintiff's preference claim against her. As stated in the Motion, that Solomon may have been an insider is irrelevant. 11 U.S.C. §550(c).

### C.    The Second Claim for Relief, Constructive Fraudulent Transfer, Against Sharareh is Fatally Defective and Must be Dismissed

Plaintiff confuses alternate pleading with the "well pleaded facts" that are included in his Second Claim for Relief against Sharareh. The Second Claim for Relief "reiterates and realleges each and every allegation contained in paragraphs 1-34 and 42-46." FAC, ¶ 57. Those paragraphs expressly incorporate Exs. 1-5 into the FAC and into the Second Claim for Relief. Therefore, in determining if plaintiff has alleged sufficient "well pleaded facts" to enable this Court to plausibly infer that a viable fraudulent transfer claim exists against Sharareh, this Court may and should "consider facts alleged in the complaint [and] documents attached to the complaint." *Davenport*, 2009 U.S. Dist. LEXIS 26946,*18-19. Similarly, "'[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Gilead*, 536 F.3d at 1055. For the reasons stated in the Motion and below, the only plausible inference is that no such claim exists.

Plaintiff attaches to the FAC Ex. 4 which lists Namco's interest and principal payments to Sharareh – all of the money in issue was paid to her on or before July 31, 2008. Sharareh's June 25, 2008 email to Namco states "I am writing to confirm your conversation with my father that **my funds will be transferred on Monday July 7, 2008**" (emphasis added) and provides wire transfer information for her bank account. FAC, Ex. 2. As shown by FAC Exs. 4-5, the $2 million of Sharareh's money was paid to her on July 8.

Plaintiff further alleges that "[b]y August 2008 [after Sharareh received all of the money owed to her], the total balance owing on the Family [which includes Sharareh, FAC, ¶ 8] loans to

Namco was in excess of $18,525.00 [sic]." As plaintiff admits (Opp., 5:26-28 (fn. 3) and FAC Ex.1 demonstrates, "$18,525.00" is a typographical error and the actual amount of the "Family" outstanding loans to Namco, even after deducting the payments to Sharareh, exceeded $18,525,000 in August 2008. Solomon's December 9, 2008 email to Tony Namvar states: "I am willing to sell my note of $18,550,000.00 . . .." Finally, FAC Ex. 1, Solomon's December 9, 2008 email to Tony Namvar, also states that Solomon had deposited $25,525,000.00 with Namvar (*i.e.,* Namco) and "out of this sum 2 million was paid to my daughter in NY . . .." As explained by Ex. 2 the "daughter in [New York]" is Sharareh. Plaintiff does not dispute any of these facts. Instead, he expressly adopted them as factual allegations in the Second Claim for Relief.

Based on the above "well pleaded facts," none of which plaintiff disputes with any contrary facts – the money paid by Namco to Sharareh was either her money or part of the money that Solomon (and/or his "Family") had loaned to Namco on her behalf. Either way, Namco's payments to Sharareh cannot be fraudulent transfers because those payments either eliminated Namco's indebtedness to Sharareh or reduced its indebtedness to Solomon and/or his Family (*i.e.* the payments were received in exchange for reasonably equivalent value; see, 11 U.S.C. §548(a)(1)(B)); as plaintiff alleges, Solomon was in control of all decisions relating to disbursements by Namco of Family loans to it and directed the payments to Sharareh. FAC, ¶¶ 25, 27; Opp., 6:17-21.

### D. The Seventeenth Claim for Relief – Claim Disallowance -- Does Not State a Claim for Relief Against Sharareh and Must be Dismissed

Plaintiff's excuse for this claim for relief against Sharareh is the statement:

> To the extent that the Defendants have filed a proof of claim or have a claim listed on Debtors' schedules as undisputed, liquidated and non-contingent, or have otherwise requested payment from debtor (collectively, the "Claims") . . .

FAC, ¶ 2; Opp., 16:9-10. If that is so, why has plaintiff not identified or attached as an exhibit to the FAC Sharareh's proof of claim, the page of the Schedules where her claim is listed, or her "otherwise requested payment from Debtor"? The answer should be obvious. There is no such claim by Sharareh.

/ / /

/ / /

Finally, plaintiff totally misses the point of Sharareh's reference to Fed. R. Bankr. P. 3007(c). While plaintiff may include a claim objection in an adversary proceeding (*id.*, 3007(b)), what he may not do is lump together claim objections – which is precisely what this claim for relief does. ("Unless otherwise ordered by the court or permitted by subdivision (d), **objections to more than one claim shall not be joined in a single objection**" *Id.*, 3007(c) (emphasis added).

## II.

## CONCLUSION

For all of the foregoing reasons and those set forth in the Motion, the Motion should be granted without leave to amend. This is plaintiff's second "bite of the apple." Moreover, "admissions in pleadings are generally binding on the parties and the Court, . . ." *Lawshe v. AmerUs Life Ins. Co.,* 19 Fed. Appx. 692, 694 (9th Cir. 2001) (citation omitted). There simply is no good reason for this Court to permit plaintiff to file yet another amended complaint against Sharareh -- which will serve only to inflict additional economic damage on her.

Dated: July 11, 2011

LANDAU GOTTFRIED & BERGER LLP
JOHN P. REITMAN
LISA N. NOBLES

By: /s/ John P. Reitman
John P. Reitman,
Attorneys for defendant Sharareh Rastegar

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 1460
Los Angeles, CA 90067

A true and correct copy of the foregoing document described **DEFENDANT SHARAREH RASTEGAR'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST HER** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 11, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Monika S Wiener    mwiener@dl.com

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On July 11, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Barry Russell
United States Bankruptcy Court
Los Angeles Division – Royal Federal Bldg.
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

Bradley D. Sharp (TR)
Development Specialist, Inc.
333 So. Grand Ave., Suite 4070
Los Angeles, CA 90071-1524

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 11, 2011 | Patricia Swierszcz | _[signature]_ |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
**9013-3.1**

F